May it please the Court, my name is Kendrick Mox, and I represent Otz Akkerman who's been disabled since his 1999 shock treatment. In the trial of this case, they were called ECT. Yes, Your Honor. At the trial of this case. You're not going to shock us by using this. The procedure is ECT. It's an accepted medical procedure. And the question here is whether the device used by the defendants was effective. So it is, Your Honor. It's not a fight over shock treatments or anything like that, right? No, it's a fight over what happened at the trial at this point. Very good. And what happened at the trial is that there were hundreds of erroneous evidentiary rulings made by the Court which denied Mr. Akkerman. Well, you only challenged 74 of them. Excuse me? You only challenged 74. There weren't hundreds. Can we just confine ourselves to the facts? All right. As to the 74 that are listed in the brief, they're all erroneous. Relevance objections were sustained by the Court for matters which are obviously relevant, which the Court even admitted were relevant in some cases and said that they could be addressed to other witnesses later in the case and never were. The Court refused to allow evidence as to knowledge of MECTA and of MECTA's employees as to specific matters which he considered to be anecdotal. Anecdotal, of course, has a limitation.       It's not a limitation. It's not a limitation. It's a limitation in that if an expert bases the entirety of his opinion on anecdotal evidence, that could be challenged or prohibited. But it's not appropriate to prohibit what the Court considered to be anecdotal evidence, which was simply the knowledge of the manufacturer of the harms or potential risks of his product. But that's precisely what happened here. Evidence was excluded of other claims made against the company. Evidence was excluded of complaints made about the ECT devices and injuries to individuals. Evidence was even excluded from the medical records, where the hospital made sworn statements to the Department of Mental Health indicating that Mr. Ackerman had received the complications of memory loss in his treatments. That was excluded as anecdotal. The overall effect of all these exclusions was that our case was eviscerated. Furthermore, the Court refused to allow our primary expert, Dr. John Friedman, to testify on the basis of a Daubert ruling. You know, I hear you reiterating your brief, and there's maybe not much else you can say. Why don't you reserve the rest of your time, and let's hear what the other side has to say in opposition, and you better be able to join issue with them once you do that. Just a suggestion. Thank you, Your Honor. Roy Weatherup of Lewis, Brisbois, Biscard, and Smith for the Appellee MECTA Corporation. It appears from the record and from the appellant's briefs that this case is indeed a crusade against shock therapy. It's based more on ideology than evidence. Let's talk about that's why I want to keep it to the district court's rulings. Yes. I'd like to hear you defend some of the rulings. Yes. Well, the evidentiary rulings. Where does this anecdotal business come from? Anecdotal is a characterization of the evidence that the plaintiff sought to introduce. I know what the district court applied it to. Where does it come from? I don't see it anywhere in the Federal Rules of Evidence. In fact, much evidence we present in court is anecdotal. We would exclude almost half of what's presented in court if we did anecdotal evidence. Well, in the context of this record, the anecdotal evidence in some cases can be admitted, but it has to pass the tests of the rules of evidence, such as there has to be a foundation in some cases. In this case, there was required. Let me rephrase my question just so you understand it. The district court on more than one occasion excluded evidence for no reason other than that it was anecdotal. No, I think that's incorrect because this whole issue. Assume I'm saying it correctly. Okay. Yeah. You can fight. You can dispute that if I'm wrong. All right. Is there any authority for excluding evidence based on simply being anecdotal? There's no authority for that, but the judge here ruling. Okay. So if it turns out the judge did exclude things for being anecdotal and no other reason, then he would have been wrong. No, because of the fact that when he used the. Wait a minute. If there's no authority for excluding evidence for being anecdotal, and if he did that, then it would follow that he's wrong, and he'd disagree with that. He can't. Yes, because in the context of the rulings in the motion in limine on anecdotal evidence and all of the other disputed hearings, the judge was using anecdotal as a shorthand for lacking foundation, lacking competence, that there was no showing of substantial similarity, that the evidence was hearsay, it was irrelevant, and it was incompetent. In other words, this. You forgot immaterial. Pardon? You forgot immaterial. Well, it was immaterial as well as incompetent. But all of this evidence was disputed all through the trial and before testimony began in the motion in limine. And the there were lengthy discussions. And I think it's very clear from the context that the use of the word anecdotal was referenced, was used in reference to all of this evidence of other people involved in shock therapy and their individual experiences, and it wasn't tied to the issues in this case. And in many cases. In a products liability case, would the fact that there have been similar complaints from other consumers not be admissible evidence? It would be admissible evidence if there. Why would it not be admissible evidence? It would not be admissible evidence unless, first, there's foundation, second, that there's a showing of substantial similarity and a showing that irrelevance, which in this case would be a showing that the evidence in question related to the same claim defect, not a generalized bad experience with shock therapy. And it would have to have a competent witness testifying. And it would have to satisfy all of the other requirements for evidence. And, yes, in some product liability cases, evidence of other injuries can be admitted upon passing all of the tests of the law of evidence. But here, the plaintiff, in addition to having an objection sustained when it shouldn't have been, an appellant has to show that there was an adequate offer of proof after the court sustained the objection. And that did not occur here. The plaintiff was too little and too late in his offers of proof. He, after the trial was over, he submitted a written offer of proof, but it was too late and the court was not required to accept it. And but besides, the written offer of proof is nothing but a string of ideological conclusions relating to shock therapy in general, not to the specific facts of this plaintiff's case. And so that even if there was error in excluding anecdotal evidence, it was not preserved in the trial court by the plaintiff. Talk to me about expert evidence. Why does the court sustain objections to Dr. Friedberg's testimony? Well. As to the opinion about the safety of the device. Well, well, that, that, this, what he called the safety of the device was a generalized attack on the scientific principles of underlying medical treatment with shock therapy. How do we know? He wasn't allowed to testify. Well, and there wasn't any offer of proof either. So we don't know if it was reversible error, even if it was error. But it was not error. Under the Daubert line of cases, the judge serves as a gatekeeper and excludes evidence based on scientific theories that are, have not passed the test specified in Daubert. And in this case, his testimony fails all the tests. So Friedberg was qualified as an expert, right? No, he wasn't. He was not qualified. It's for the judge to decide whether he was qualified. And the fact that 30 years ago, he ---- You know, if you just let me finish my question, then you wouldn't waste time. Did this judge here found him qualified as an expert? To some extent. He was not qualified to the extent ---- I'm sure. I'm not sure. There was a limited qualification? Well, there's certain opinions he was allowed to express and certain opinions he was not. And it's the latter category about which the plaintiff complains here. And this type of ruling ---- Do you understand the difference between qualifying a witness as an expert and sustaining objections to certain questions? Well, they can be interrelated because if the person ---- The question I asked is capable of a yes or no answer, or I don't know. You can have your pick of those three. Do you understand the difference between qualifying a witness as an expert and sustaining objections to the witness? Yes. Okay. Did the district judge and did the district ---- You do understand the difference, yes? Did the district judge here qualify Dr. Friedberg as an expert? And with a certain limited scope of expertise, yes. You mean the ruling said you are limited in scope? All experts are limited in scope. Yes. But you can't qualify somebody as a doctor that can't testify as being an expert in plumbing or in physics, right? That's right. And that's what happened here. Was there a special limitation attached here? Well, I think the court found the scope of this witness's expertise, and then questions were asked that far were outside the scope. Like, for example? Well, the questions where it was offered ---- Well, it wasn't a question pertaining to the safety of his device within the expertise for which he was qualifying. Because there has to be foundation about the medical condition of the plaintiff. No, no, no, no, no, no, no. That's a different kind of objection. You are not going to tell me why it's outside the expertise. You're going to tell me why the doctor is not going to testify about plumbing. Okay? And why is the question of whether this device is safe outside Dr. Friedberg's expertise? Because that's the question of relating to medical science in general, and an opinion that shock therapy is never appropriate is not a proper scientific expert's opinion. And that's what we have here. We have very specific facts. Why not? Well, one cannot ---- I don't think that's what ---- I mean, it's not clear to me that's what he said or tried to say. But why wouldn't that be? If he's qualified to express an opinion on shock therapy and he's an expert in the field, why can't he say, I think it's always unsafe? He may be qualified as an expert in medicine in general, but he's not qualified as an expert in all medical science or even an entire branch of medical science. And and and also with regard to the specific questions that he was asked, there were foundational objections, hearsay, objections and other objection relevance and and things of this type. And that's under the Daubert line of cases, a court is required to keep out this type of junk science. So your position appears to be, then, that the judge kept out Dr. Friedberg's testimony on a Daubert ---- applying a Daubert standard. Yes. And if one looks at the record as a whole ---- What about the cross-examination of Dr. Coffey? What justification was there for limiting that? Well, I think it's the same thing. If if each of these ---- I understand Dr. Ackerman was not qualified, but they assume that Dr. Coffey was qualified because you put him on. So so ---- Well, and as to the defendant's experts, for the most part, there wasn't even any objection. Am I wrong? Is Coffey was a defense expert? Let me just make sure I have my ---- Well, the plaintiff in ---- I'm asking you a question. Yeah. Was he a defense expert? I believe he was. I don't remember all the names of all the witnesses. But the plaintiff complains in his brief about the defense experts got in everything. Well, they satisfied the requirements of Daubert, foundation. I'm asking about cross-examination of Dr. Coffey. You know, I don't recall that among the 74 particular ---- I don't recall. You can't help us. On that one, but ---- Thank you. Okay. Thank you. How did you make such a friend of the district judge here? I've asked myself that many questions many times, Your Honor. Go ahead. It was a nightmare. I lost 10 pounds during the trial. I'll leave it at that. Go ahead. Dr. Coffey, of course, was their primary expert. We'll try not to take any more pounds off today. All right. Dr. Coffey was their expert, yes? He was their primary ECTA. And as I recall, you tried to cross-examine him. Were you? You were the trial lawyer. Yes, I was. You tried to cross-examine him about his opinion on the safety of the defendant's advice, right? Yes, sir. Your floor. I just wanted to get us in the same place. Yes. You asked why did the judge exclude Dr. Friedberg. He didn't tell us. The answer is he wouldn't tell us why. As you pointed out, he indicated earlier that he was qualified on Daubert, under Daubert. But Daubert is a two-step analysis. First, you have to qualify the expert, but then the judge still has to do a gatekeeping function. You know, I saw the remand opinion in Daubert. I sort of thought it was a little weird. I said that in an opinion that, you know, you have this person who's qualified as an expert, and yet the judges who are not experts are supposed to second-guess. But there it is. That's what the Supreme Court says we're supposed to do. You certainly changed the world with the Daubert opinion, I must say. I'm sorry? You certainly changed the scope of all of our lives. It's not me. I got it wrong in Daubert. They reversed me, so I take no blame. I take no credit. But specifically, Dr. Friedberg was qualified as what? As an expert in ECT. He spent 30 years studying ECT. He treated hundreds of ECT patients. He wrote a peer-reviewed medical journal article on ECT. He wrote a book about it. And then the district judge sustained an objection to his testimony about the safety of the device? Well, causation, actually, was the primary issue. I brought in to show that the ECT indeed caused the injuries, but the Court refused to permit him to indicate first, in my brief, the Court refused to permit the witness to testify what his diagnosis was with respect to whether ECT caused his injuries. He refused to allow him to say whether ECT could have caused the injuries. He refused to permit him to answer whether, in his opinion, the injuries were caused by ECT. He refused to allow him to give a differential diagnosis opinion as to whether anything else could have caused his injuries other than the ECT. So it was really primarily a causation issue with Mr. Friedberg, Dr. Friedberg. And, of course, we couldn't go anywhere near the effects of ECT itself with Dr. Friedberg. He was my primary expert for that, and that was completely barred. Your case, as far as I understand it, was basically that they were using a bilateral device, whereas they should have been using a unilateral device. Is that something that's hard to reclaim? Yes, Your Honor. That was one of our issues on the alternative design theory, is that all of the experts, and even MECTA, agreed that unilateral causes far, far less memory loss and damage than bilateral. And so I sought questions of their witnesses, including their engineer, their primary electrical engineer. Couldn't you have just made the device with a strap that you'd only use the strap and it could only be unilateral? That was precluded. I wasn't permitted to put on any evidence of that whatsoever. But, obviously, if that — if I could have shown that, I could have won the case simply by showing that he's been damaged and that their machine was improper in terms of the alternative design theory. Well, what do you think the district judge's gate is that the district judge's gate could be functioning in a situation like that? I mean, ECT is a procedure that's accepted fairly widely, as I understand it. And can somebody come along and say that it's never safe? Well, that wasn't necessarily the issue. And with respect to — I understand. But the answer is yes. The answer is yes. In fact, the National Council of Disabilities, the one thing that we had such a flap on at the end of the trial in the closing argument, said that — that exactly. After their investigation, on behalf of the President, this national — this federal agency said ECT shouldn't be used because there are things — other treatments are far safer. And it's — they even used the word barbaric. They used the term barbaric. Note that even their experts said, we have no idea how it works. After all these years and all these treatments, we don't know how it works. We just — we just think it does. So the issue in this case, as you correctly pointed out at the outset, is as to Mr. Ackerman. However, could the Court have found that ECT is dangerous? Of course. Could the jury? Of course. But that wasn't really your case. Your case was that this particular device was dangerous. Yeah. And it could have been made safer, right? One of my issues. The other issue was that ECT, as applied to Mr. Ackerman, was dangerous and he wasn't informed of the risks. This company doesn't inform their practitioners, doesn't inform the ultimate users, the consumers of the actual risks that the company knows and should know. Now, they are required to file with the FDA, isn't it? Yes, sir. Yeah, FDA. I forgot the control devices they — Federal agency. I know. And they don't get into trouble for not reporting these things? No. Well, the FDA doesn't police a lot of things probably as well as it should. No. But they never filed these reports of the complaints. Even when they got sued, did they file this lawsuit? Did they? They did not file it with the FDA. They never told the FDA they'd been sued any time. Never did it. Not once. Wow. But remember, this device has never gone beyond Class III, if the Court's familiar with these characterizations. It's always been considered an experimental device. When the FDA took over the control of medical devices, they gave a period of time where they said, everything's Class III until you prove it otherwise. And Class III is, it's never — the safety and efficacy has never been proved, and yet it's been grandfathered in and permitted to be used all these years because the machines now are the same as the ones then. Just a little piece of advice. You are at your best when you talk about this device. When you get on the soapbox and start talking about it, you don't do your client any good. It's a weakness. I understand. But controlling weaknesses in court is part of your trade. I mean, the fact of the matter is there are people who benefit from this technology. You may not believe it, but there are. And it's a difficult problem. Yes. That's a separate question, and this is why we have federal agencies who look at these things and balance interests. That's a very different question from whether or not this particular device that was used on a client could have or should have been safer. It is, Your Honor. And if they had informed my client and practitioners of the potential risks, then they could have. Just watch the soapbox. It doesn't — Yeah. It doesn't help. Okay. Well, I just wanted to point out that that's the issue. It is an issue of whether they should have informed them of these potential risks. That's why we're there. Fair enough. Okay. The case is argued. We'll stand some minutes. Thank you. Yeah. Okay. Next case on the calendar is
judges: Kozinski, Tallman, Sandoval